*1052 OPINION.
Love :
The petitioner’s claim to the deduction from income for the year 1920 of the amount of $6,596.71 as a bad debt owing from Orrin S. Claypoole is predicated upon section 214 (a) (7) o.f the Revenue Act of 1918, which provides:
Sec. 214. (a) That in computing net income there shall be allowed as deductions:
****** *
(7) Debts ascertained to be worthless and charged oft within the taxable year.
The Board has held that to be entitled to the benefit of the section quoted, a taxpayer must establish, first, that the debt was ascertained to be worthless during the taxable year, and, second, that the debt was charged off during the taxable year. H. L. Gueydan, 4 B. T. A. 1250. Under section 234 (a) (5) of the same statute we construed an exactly similar provision concerning corporations, to the same effect. Mason Machine Works Co., 3 B. T. A. 745.
In our opinion the petitioner has failed to establish either of the essentials predicate to allowance of the deduction claimed. Upon the record before us we would even be hesitant in finding that the debt was in fact worthless or that the petitioner has ever ascertained it to be so.
In support of the alleged ascertainment of worthlessness during 1920, the petitioner testified that he repeatedly requested Claypoole to settle the account, such requests being made during 1919 and 1920. Claypoole’s promise to do so when he had “ good luck ” never mate *1053 rialized. In 1919 he discovered that a house Claypoole claimed to own stood in the name of Claypoole’s wife. In 1920 he learned that Claypoole was frequently spending time, and presumably money, in Pittsburgh and that he was not living with his wife. Upon these facts the petitioner asks us to find that he ascertained the debt to be worthless during 1920.
The petitioner testified that among his reasons for opening a new account on June 18, 1919, was the fact that he “ considered the other account was worthless.” Again he testified that he thought his determination of worthlessness was made “ during 1919, as shown on the last page there, where it is ruled off.” This statement refers to December 31, 1919. At various other points he testified that it was during 1919 and again that it was during 1920. Among his reasons for believing that his ascertainment of worthlessness occurred in 1920 was the fact that he did not carry the old account into the new one at January 1, 1920.
The testimony mentioned above does not impress us with the idea that the petitioner can now state definitely that he ascertained the debt in question to be worthless during 1920. In fact, under examination the petitioner always found himself on very uncertain ground when trying to fix the ascertainment as occurring in that year. He freely admitted no independent recollection and his books give little support to such a conclusion.
On brief the petitioner’s counsel contends that the original account could not have been determined to be worthless at May 23, 1919, when the last contract carried in that account was completed, because until December 31, 1919, when Claypoole submitted his final bills under the contracts so carried, the petitioner could not balance the account to determine how the parties stood.
Admitting that a final balance awaited submission of Claypoole’s bills, it does not necessarily follow that the account was neither worthless nor ascertained to be worthless prior to submission of such bills. Submission of the bills might well be merely the means of enabling the petitioner to determine with exactness his loss on an account long known to hold a loss. If such was the case, as appears, even the amount of the petitioner’s loss was determined on December 31, 1919. It may be remarked that Claypoole had consistently overdrawn his account and the petitioner testified definitely that he had long sought to have the matter corrected.
We thus come to the conclusion that the petitioner has failed to sustain the burden of proof that the debt involved was ascertained to be worthless in the taxable year. It thereby becomes unnecessary for us to consider the effect, if any, of the second Claypoole account, which, upon the petitioner’s theory, ran concurrently with the first *1054 from June 18, 1919, to December 31, 1920. Neither have we to discuss whether the debt was charged off during the taxable year, but, as hereinbefore indicated, we believe that the petitioner has likewise failed to sustain his burden in relation to that point.

Judgment will be entered for the respondent.